# Plaintiff's Exhibit

# PX 3-4

# IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
## JACKSON COUNTY
## STATE OF MISSOURI

STATE OF MISSOURI, ex rel.     )
Attorney General Chris Koster,   )
                            )
       Plaintiff,        )   Case No.
vs.                        )
                            )   Division:
A+ FINANCIAL CENTER, LLC,   )
a/k/a A PLUS FINANCIAL      )
CENTER LLC; a/k/a A PLUS     )
FINANCIAL CENTERS;        )
a/k/a CARD SERVICES; a/k/a   )
ACCELERATED FINANCIAL    )
CENTERS, LLC           )
     10258 S. US Hwy 1      )
     Port Saint Lucie, FL 34952  )
                            )
Registered Agent:        )
                            )
Dana Miano             )
     10258 S. US Hwy 1      )
     Port Saint Lucie, FL 34952  )
                            )
and                   )
                            )
CHRISTOPHER MIANO,      )
an individual,           )
     10258 S. US Hwy 1      )
     Port Saint Lucie, FL 34952  )
                            )
       Defendants.     )

Case No. 1216-CV08986

Division: 8

FILED-CIRCUIT COURT
JACKSON CO MO-KC
2012 MAR -8  PM 9: 42

-1-

**PX 3-4**

## PETITION FOR PRELIMINARY AND PERMANENT INJUNCTIONS, RESTITUTION, CIVIL PENALTIES, AND OTHER COURT ORDERS

The State of Missouri, at the relation of Attorney General Chris Koster, brings this Petition for Preliminary and Permanent Injunctions, Restitution, Civil Penalties, and Other Court Orders against A+ Financial Center, LLC and Christopher Miano, and upon information and belief, states as follows:

### PARTIES

1.      Chris Koster is the duly elected, qualified and acting Attorney General of the State of Missouri and brings this action in his official capacity pursuant to Chapter 407, RSMo 2010.[1]

2.      Defendant A+ Financial Center, LLC ("AFC") is a fictitious name registered with the Secretary of State of Florida; its registered agent is Dana Miano, 10258 S. US Highway 1, Port Saint Lucie, Florida 34952.  AFC has its principal place of business at 10258 S. US Highway 1, Port Saint Lucie, Florida 34952.

3.      Defendant Christopher Miano is a natural person who resides in Florida and is being sued in his individual capacity.  Defendant Christopher

---

[1] All statutory references are to Missouri Revised Statutes (2010), unless otherwise noted.  Where a citation gives a supplement year – *e.g.* "(Supp. 2011)" – the citation is to the version of the statute that appears in the corresponding supplementary version of the Missouri Revised Statutes, and, where relevant, to identical versions published in previous supplements.

**PX 3-4**

Miano served as AFC's manager and registered agent from February 18, 2011, through June 9, 2011, at which time Dana Miano became the manager and registered agent.

4.     Defendants have done business within the State of Missouri by soliciting customers to lower their credit card interest rates within the State of Missouri.

5.     Any acts, practices, methods, uses, solicitations, or conduct of the Defendant alleged in this petition include the acts, practices, methods, uses, solicitations, or conduct of Defendant's employees, agents, or other representatives acting under its direction, control, or authority.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction under Art. V, § 14 Mo. Const.

7.     This Court has subject matter and personal jurisdiction over the Defendants under Art. V, § 14 Mo. Const. and §§ 407.1107.6 and 506.500.

8.     This Court has authority over this action under § 407.010 et. seq., which allows the attorney general to seek injunctive relief and civil penalties for knowing violations or threatened knowing violations of §§ 407.1073-1104.

**PX 3-4**

## VENUE

9.     Venue is proper in this Court pursuant to § 407.100.7, which provides that "[a]ny action under this section may be brought in the county in which the defendant resides, in which the violation alleged to have been committed occurred, or in which the defendant has his principal place of business."

10.     Defendants have advertised, marketed, and solicited services to lower credit card interest rates in Jackson County, Missouri, and have engaged in the acts, practices, methods, uses, and conduct described below that violate §§ 407.1073, 407.1076, 407.1098 and 407.1104.

## THE MISSOURI TELEMARKETING LAW

11.     Section 407.1073.1 provides, in pertinent part:

A telemarketer shall disclose, promptly and in a clear and conspicuous manner, to the consumer receiving the telephone call the following:

(1)     That the purpose of the telephone call is to make a sale;

(2)     The telemarketer's identifiable name and the seller on whose behalf the solicitation is being made; . . . and

(5)     If the telephone call is made by any recorded, computer-generated, electronically generated or other voice communication of any kind.  When engaged in telemarketing, such voice communication shall, promptly at the beginning of the telephone call, inform the consumer

-4-

**PX 3-4**

that the call is being made by a recorded, computer-generated, electronically generated or other type of voice communication, as the case may be.

## THE MISSOURI DO NOT CALL LAW

14.   Section 407.1098 provides, in pertinent part:

No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of such subscriber's objection to receiving telephone solicitations.

15.   Section 407.1104.1 provides:

Any person or entity who makes a telephone solicitation to the telephone line of any residential subscriber in this state shall, at the beginning of such call, state clearly the identity of the person or entity initiating the call.

16.   Section 407.1107 provides, in pertinent part:

1.   The attorney general may initiate proceedings relating to a knowing or threatened knowing violation of section 407.1098, or 407.1104. Such proceedings may include, without limitation, an injunction, a civil penalty up to a maximum of five thousand dollars, for each knowing violation and additional relief in any court of competent jurisdiction. The attorney general may issue investigative demands, issue subpoenas, administer oaths and conduct hearings in the course of investigating a violation of section 407.1098 or 407.1104.

**PX 3-4**

2.     In addition to the penalties provided in subsection 1 of this section, any person or entity that violates section 407.1104 shall be subject to all penalties, remedies and procedures provided in sections 407.010 to 407.130.  The remedies available in this section are cumulative and in addition to any other remedies available by law.

17.     A "residential subscriber" is defined as "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." § 407.1095(2).

18.     A "telephone solicitation" is defined as "any voice communication over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services." § 407.1095(3).

19.     ADAD equipment, also known as "automatic dialing and announcing device," is "any device or system of devices which is used, whether alone or in conjunction with other equipment, for the purposes of automatically selecting or dialing telephone numbers and disseminating recorded messages to the numbers so selected or dialed." 15 CSR 60-13.010(2)(A) (2001)[2].

## COUNT I – VIOLATIONS OF THE DO NOT CALL LIST

---

[2]  The Attorney General is statutorily empowered pursuant to § 407.1101.2 to promulgate rules and regulations governing the establishment of the No-Call database as he deems necessary and appropriate to fully implement the provisions of Sections 407.1095 to 407.1110.

**PX 3-4**

20.     Beginning on at least June 3, 2011 and continuing through the present, Defendants have engaged in a pattern of outbound calls resulting in numerous violations of Missouri's No-Call List Laws by making or causing to be made telephone solicitations to the telephone lines of residential subscribers in the State of Missouri who have given notice to the Attorney General of the subscribers' objections to receiving telephone solicitations and were placed on Missouri's Telemarketing No-Call List. (Exhibit A).

21.     Specifically, Defendants have made or caused to be made telephone solicitations to residential subscribers in the State of Missouri in an attempt to sell services to lower interest rates on credit cards.

22.     Residential subscribers, after having given notice to the Attorney General of their objections to receiving telephone solicitations, received telephone solicitations to their residential telephone lines from the Defendants and captured the telephone numbers associated with the Defendants on their caller identification screen, voice-mail recordings, *69 call return service, or by speaking with Defendants. (Exhibit A).

23.     Upon information and belief, the telephone numbers obtained by residents were used by the Defendants to make outbound calls.  The telephone solicitations referred to in preceding paragraphs were made to

-7-

**PX 3-4**

natural persons who have subscribed to residential telephone service from a local exchange company.

24.   Defendants' telephone solicitations were made to residential subscribers who have given notice to the Attorney General that they objected to receiving telephone solicitations.

25.   A copy of the No-Call Database was available to the Defendants, but they did not obtain it prior to making the outbound calls.

26.   At no time did the individuals who gave notice to the Attorney General that they objected to receiving telephone solicitations, revoke their objection.

27.   The telephone solicitations referenced in the preceding paragraphs were voice communications over a telephone line, through the use of ADAD equipment or by other means, for the purpose of lowering interest rates on credit cards.

## COUNT II – VIOLATIONS OF THE TELEMARKETING LAW

28.   Plaintiff incorporates all allegations above stated.

29.   Defendants failed to promptly disclose in a clear and conspicuous manner to the consumer that the purpose of the telephone call is to make a sale.

**PX 3-4**

30.  Defendant failed to promptly disclose in a clear and conspicuous manner to the consumer the telemarketer's identifiable name and the seller on whose behalf the solicitation was being made.

31.  Defendant failed to promptly disclose in a clear and conspicuous manner to the consumer that the call was being made by a recorded, computer-generated, electronically generated or other type of voice communication.

### **RELIEF**

WHEREFORE Plaintiff prays this Court to enter judgment:

a.     Finding that the Defendants have violated the provisions of §§ 407.1073, 407.1098, and 407.1104;

b.     Issuing preliminary and permanent injunctions pursuant to § 407.100 prohibiting and enjoining Defendants, and any of their agents, employees, or other persons acting with the Defendants, from making or causing to be made telephone solicitations to the telephone lines of residential subscribers in the State of Missouri who have given notice to the Attorney General of the subscribers' objections to receiving telephone solicitations;

**PX 3-4**

c.     Requiring Defendants to pay a civil penalty to the State of Missouri pursuant to § 407.1107 in the amount of five thousand dollars ($5,000.00) for each and every violation of §§ 407.1073, 407.1098, and 407.1104;

d.     Requiring Defendants to pay pursuant to § 407.130 all court, investigative, and prosecution costs of this action;

e.     Requiring Defendants to pay the State pursuant to § 407.140.3 an amount of money equal to ten percent (10%) of the total restitution ordered against Defendants, or such other amount as the Court deems fair and equitable; and

f.     Granting any additional relief that is just and proper.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

*L Peterson*
Lauren Peterson, Mo. Bar # 61014
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-4304; FAX: (573) 751-2041
lauren.peterson@ago.mo.gov

ATTORNEYS FOR PLAINTIFF

-10-

**PX 3-4**

Accelerated Financial Centers
Exhibit A

|  | A | B | C | D |
|---|---|---|---|---|
| 1 | Date Added | Phone Called | TM Phone | Date of Call |
| 2 | 05/01/01 | (816) 746- | 7724081340 | 6/3/2011 |
| 3 | 04/30/01 | (816) 924- | 7724081340 | 6/3/2011 |
| 4 | 05/01/01 | (816) 861- | 7724081340 | 6/4/2011 |
| 5 | 12/18/00 | (573) 238- | 7724081340 | 6/4/2011 |
| 6 | 12/18/00 | (573) 238- | 7724081340 | 6/4/2011 |
| 7 | 12/18/00 | (573) 238- | 7724081340 | 6/4/2011 |
| 8 | 02/01/06 | (417) 334- | 7724081340 | 6/4/2011 |
| 9 | 03/29/04 | (636) 225- | 7724081340 | 6/6/2011 |
| 10 | 05/02/01 | (660) 291- | 7724081340 | 6/6/2011 |
| 11 | 05/02/01 | (660) 291- | 7724081340 | 6/6/2011 |
| 12 | 03/29/04 | (636) 225- | 7724081340 | 6/8/2011 |
| 13 | 05/02/01 | (660) 291- | 7724081340 | 6/8/2011 |
| 14 | 05/13/11 | (816) 625- | 7724081340 | 6/8/2011 |
| 15 | 11/01/06 | (314) 351- | 7724081340 | 6/9/2011 |
| 16 | 05/02/01 | (660) 291- | 7724081340 | 6/9/2011 |
| 17 | 05/13/11 | (816) 625- | 7724081340 | 6/9/2011 |
| 18 | 02/01/08 | (660) 947- | 7724081340 | 6/10/2011 |
| 19 | 02/01/08 | (660) 947- | 7724081340 | 6/10/2011 |
| 20 | 02/01/06 | (417) 286- | 7724081340 | 6/10/2011 |
| 21 | 02/01/08 | (660) 947- | 7724081340 | 6/10/2011 |
| 22 | 02/01/08 | (660) 947- | 7724081340 | 6/10/2011 |
| 23 | 02/01/08 | (660) 947- | 7724081340 | 6/11/2011 |
| 24 | 02/01/06 | (417) 334- | 7724081340 | 6/11/2011 |
| 25 | 02/01/06 | (417) 334- | 7724081340 | 6/11/2011 |
| 26 | 02/01/08 | (660) 947- | 7724081340 | 6/11/2011 |
| 27 | 02/01/08 | (660) 947- | 7724081340 | 6/11/2011 |
| 28 | 03/27/02 | (417) 725- | 7724081340 | 6/13/2011 |
| 29 | 05/01/01 | (816) 746- | 7724081340 | 6/15/2011 |
| 30 | 02/01/08 | (660) 947- | 7724081340 | 6/22/2011 |
| 31 | 12/12/00 | (573) 395- | 7724081340 | 6/29/2011 |
| 32 | 04/23/01 | (816) 792- | 7724081340 | 6/30/2011 |
| 33 | 03/04/10 | (573) 678- | 7724081340 | 7/1/2011 |
| 34 | 03/04/10 | (573) 678- | 7724081340 | 7/7/2011 |
| 35 | 01/29/01 | (660) 885- | 7724081340 | 7/7/2011 |
| 36 | 03/04/10 | (573) 678- | 7724081340 | 7/7/2011 |
| 37 | 12/29/00 | (660) 886- | 7724081340 | 7/8/2011 |
| 38 | 08/08/01 | (573) 223- | 7724081340 | 7/8/2011 |
| 39 | 08/08/01 | (573) 223- | 7724081340 | 7/8/2011 |
| 40 | 02/01/05 | (660) 826- | 7724081340 | 7/8/2011 |
| 41 | 11/15/02 | (314) 298- | 7724081340 | 7/13/2011 |
| 42 | 11/01/06 | (314) 351- | 7724081340 | 9/22/2011 |
| 43 | 11/15/02 | (314) 298- | 7724081340 | 9/22/2011 |
| 44 | 11/15/02 | (314) 298- | 7724081340 | 9/22/2011 |
| 45 | 05/01/01 | (816) 746- | 7724081340 | 9/27/2011 |
| 46 | 12/29/00 | (660) 886- | 7724081340 | 9/28/2011 |
| 47 | 11/01/03 | (314) 862- | 7724081340 | 11/1/2011 |
| 48 | 06/18/02 | (573) 358- | 7724081340 | 11/1/2011 |

Accelerated Financial Centers
Exhibit A

|    | A        | B           | C          | D         |
|----|----------|-------------|------------|-----------|
| 49 | 02/01/02 | (816) 474-  | 7724081340 | 11/4/2011 |

# Plaintiff's Exhibit

# PX 3-5

BEFORE THE ATTORNEY GENERAL OF WEST VIRGINIA
STATE CAPITOL
CHARLESTON, WEST VIRGINIA

IN THE MATTER OF THE INVESTIGATION OF:

CHRIS MIANO and
ACCELERATED FINANCIAL CENTERS, LLC
1679 SW SOUTH MACEDO BOULEVARD
PORT SAINT LUCIE, FLORIDA 34984

_____

### ASSURANCE OF DISCONTINUANCE
_____

The Attorney General of West Virginia ("Attorney General") has been investigating certain acts and practices of Chris Miano and Accelerated Financial Centers, LLC (collectively "AFS"). In accordance with W. Va. Code § 46A-7-107, AFS, without in any way admitting that any of prior practices were in violation of the West Virginia Consumer Credit and Protection Act, ("WVCCPA"), W. Va. Code § 46A-1-101 *et seq.* or other applicable laws, has consented to observe the following terms, conditions, and agreements in the future conduct of its business from and after the date of this **ASSURANCE OF DISCONTINUANCE**:

### BACKGROUND AND APPLICABLE LAW

1.     AFS is a for-profit company and maintains a principal business office at 1679 SW South Macedo Boulevard, Port Saint Lucie, Florida 34984.

2.     Chris Miano is and was the president or principal officer of AFS at all times pertinent hereto.

3.     AFS has engaged in the sale of "consumer goods or services" in West Virginia as defined by W. Va. Code § 46A-6F-104, consisting primarily of debt relief and credit services.

**PX 3-5**

4.    The West Virginia Credit Services Organizations Act ("CSO Act"), W. Va. Code § 46A-6C-1 *et seq.*, regulates the provision of "credit services", which it defines as:

    (1)    improving the buyer's credit record, history or rating;
    (2)    obtaining an extension of credit for a buyer; or
    (3)    providing advice or assistance to a buyer with regard to subdivision (1) and (2) of this subsection.

*See* W. Va. Code § 46A-6C-2(a).

5.    AFS engaged in the sale of consumer goods or services in West Virginia through "telemarketing solicitations" as defined by the Telemarketing Act, W. Va. Code § 46A-6F-112(a), directly and through others it characterized as independent businesses.

6.    A company that engages in telemarketing solicitations for the sale of consumer goods or services in West Virginia in violation of the Telemarketing Act is subject to a civil administrative penalty of not more than $5,000.00, as authorized by W. Va. Code § 46A-6F-303(a).

7.    The activities of AFS and its agents are subject to the provisions set forth in the WVCCPA, which is regulated by the Attorney General pursuant to W. Va. Code § 46A-7-101 *et seq.*

8.    Repeated and wilful violations of the WVCCPA may subject the violator to civil penalties of up to $5,000.00 for each violation, in accordance with West Virginia Code § 46A-7-112(2).

9.    For purposes of this Assurance, "West Virginia Consumers" shall mean and include all persons who resided at or provided AFS with a West Virginia address at the time of purchasing any debt relief or credit services from AFS.

2

**PX 3-5**

## THE ATTORNEY GENERAL'S ALLEGATIONS

10.     On February 22, 2010 the Attorney General commenced an investigation of AFS after receiving consumer complaints disclosing that AFS was engaging in certain business practices which may violate the WVCCPA as set forth herein below.

11.     AFS made outbound telemarketing calls to West Virginia Consumers for the purpose of selling a variety of debt relief and credit services, including assistance toward becoming debt free, financial planning and counseling, and programs to lower credit card interest rates through balance transfers and other means.

12.     AFS consummated its sales to West Virginia Consumers over the telephone in exchange for the consumer's oral consent to a one-time charge to their credit card ranging from $495.00 to $1,095.00 or more.

13.     AFS engaged in the sale of consumer goods or services, particularly debt relief and credit services, in violation of the Telemarketing Act, W. Va. Code § 46A-6F-101 *et seq.*, as follows:

(a)     By engaging in telemarketing solicitations without first registering as a telemarketer with the state tax department as required by W. Va. Code § 46A-6F-301(a);

(b)     By engaging in telemarketing solicitations without first posting a surety bond in the amount of $100,000.00 with the state tax department for each principal office and each branch office thereof, in violation of W. Va. Code § 46A-6F-302(a);

(c)     By engaging in telemarketing solicitations without keeping records of its telemarketing activities in the manner and form required by W. Va. Code § 46A-6F-304;

(d)     By engaging in telemarketing activities without making the mandatory disclosures in telemarketing communications with consumers prior to accepting payment

3

**PX 3-5**

from consumers for goods or services offered for sale, as required by W. Va. Code § 46A-6F-401(a) and (b);

(e)     By engaging in telemarketing solicitations without having a policy that affords consumers the unconditional right to rescind for at least seven (7) days following the date of transaction and that meets the other criteria required by W. Va. Code § 46A-6F-402 and its subparts.

14.     AFS engaged in the business of providing "credit services" as defined by the CSO Act, W. Va. Code § 46A-6C-2(a)(2) and 2(a)(3), by promising to assist consumers in lowering their interest rates and by obtaining balance transfers or other extensions of credit for consumers.

15.     AFS , as a for-profit company, is not exempt from the CSO Act and, therefore, has allegedly violated the CSO Act as follows:

(a)     By operating the business of a credit services organization without first filing a registration statement with the West Virginia Secretary of State, in violation of W. Va. Code § 46A-6C-5;

(b)     By operating the business of a credit services organization without first obtaining a surety bond or establishing a surety account with the West Virginia Secretary of State, in violation of W. Va. Code § 46A-6C-4(a);

(c)     By entering into contracts or agreements to provide credit services to West Virginia consumers without first providing consumers with a disclosure statement containing the terms required by W. Va. Code § 46A-6C-6; and

**PX 3-5**

(d)     By entering into contracts or agreements to provide credit services to consumers when the contracts did not comply in form or substance with the requirements of W. Va. Code § 46A-6C-7.

## AGREEMENT

16.     Without admitting that it has committed any of the violations set forth herein, AFS promises to take the actions set forth herein below in order to resolve the concerns of the Attorney General.

17.     AFS, its employees, agents, servants, heirs, successors, and assigns does hereby promise and voluntarily assure the Attorney General that it will comply with the WVCCPA, W. Va. Code § 46A-1-101 *et seq.*, the West Virginia Debt Pooling Statute, W. Va. Code § 61-10-23, the West Virginia Credit Services Organizations Act, W. Va. Code § 46A-6C-1 *et seq.*, the regulations governing the practice of law, and other applicable laws.

18.     AFS shall permanently refrain from engaging in the sale of consumer goods and services via telemarketing solicitations in West Virginia unless it becomes registered and bonded as a telemarketer as required by the Telemarketing Act, W. Va. Code § 46A-6F-101 *et seq.* and provides verifiable written confirmation to the Attorney General that it has established the necessary policies and procedures to fully comply with all substantive provisions of the Telemarketing Act.

19.     AFS agrees to permanently refrain from engaging in the practice of offering debt settlement, debt negotiation, credit repair, arranging extensions of credit, debt pooling, and any other debt relief or credit services whatsoever to West Virginia consumers.

20.     AFS agrees to refund all payments of any type, however characterized, that consumers paid to AFS for the provision of debt relief, credit services, or any other services

PX 3-5

from the time AFS commenced offering debt relief or credit services to West Virginia consumers up to and including the present.

21.     AFS shall make a full refund of all fees and charges that it collected from West Virginia consumers, which amount it represents to be $7,445.00.

22.     AFS shall meet its obligation to make refunds by making a payment of $7,445.00 to the State of West Virginia within 10 days after the date of execution of this Assurance.

23.     If it has not already done so, AFS shall also provide the Attorney General with a report in hard copy and electronically in Microsoft Excel or other mutually agreed upon format, within 10 days after the date of this Assurance, containing the names, addresses, telephone numbers and social security numbers of all affected consumers, the date of the transaction, and the amount actually collected from each consumer by AFS.

24.     Thereafter, the Attorney general shall prepare and distribute checks to each consumer in the appropriate amount along with an explanatory cover letter.

25.     AFS further agrees that, in the event the Attorney General is not able to locate consumers to whom refunds are owed after making a reasonable effort to do so, such amounts shall be retained by the Attorney General, placed in trust, and used solely for consumer protection purposes, including but not limited to, restitution, consumer education, credit or bankruptcy counseling and education, conflict resolution programs and costs associated with implementing restitution orders.

26.     AFS agrees to distribute executed copies of this Assurance to every officer, employee, assignee, and agent of AFS involved, directly or indirectly in the sale or provision

**PX 3-5**

of debt relief or credit services. At its option, AFS may provide a complete and accurate summary of the terms and conditions of the Assurance to all such persons.

27.     AFS further promises not to represent directly or indirectly, or in any manner whatsoever, that the Attorney General has sanctioned, condoned or approved, in any manner whatsoever, any part or aspect of its business operation, unless written authorization is obtained from the Attorney General, and then only to the extent of said written authorization. It is agreed and understood that the contents of this Assurance are and shall be public information.

28.     It is further agreed and understood that, while the parties to this Assurance presently intend to cooperate in securing and obtaining compliance with the terms of this Assurance, the matters settled by the filing of this agreement may be reopened by the Attorney General of West Virginia if necessary for the purpose of enforcing the specific terms of this Assurance.

7

**PX 3-5**

IN WITNESS WHEREOF, AFS has caused this Assurance to be executed and represents that the person whose signature appears below is authorized to bind AFS International, Inc. to the terms and conditions set forth herein. The Attorney General of West Virginia or his designate has approved this Assurance.

10/11/10
_____
DATE

CHRIS MIANO and
ACCELERATED FINANCIAL CENTER, LLC

BY: _____
(Signature)

TITLE: _Christopher L Miano CEO_
(Print Name and Title)

STATE OF _FLORIDA_,

COUNTY OF _Martin_, TO-WIT:

Taken, subscribed, and sworn to before me in the County and State aforesaid this _11th_ day of _March_, 2010.

My commission expires _____

PAMELA ANN BARNES
MY COMMISSION # DD 811411
EXPIRES: September 17, 2012
Bonded Thru Notary Public Underwriters

_____
NOTARY PUBLIC

APPROVED BY:

JILL MILES
DEPUTY ATTORNEY GENERAL

_____
NORMAN GOOGEL
ASSISTANT ATTORNEY GENERAL
Consumer Protection/Antitrust Division

DATED: _March 15, 2010_

8

**PX 3-5**

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

     Taken, subscribed, and sworn to before me in the County and State aforesaid this

15th day of March , 2010.

My commission expires _____ June 29, 2015 _____

_____
NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
ANGELA B. GRAVELY
5 Meadow Lane
Scott Depot, WV 25560
My Commission Expires June 29, 2015

9

**PX 3-5**