## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  12-CV-14373-DLG

**FEDERAL TRADE COMMISSION,**

     Plaintiff,

    v.

**A+ FINANCIAL CENTER, LLC,** a Florida limited liability company, also doing business as **ACCELERATED FINANCIAL CENTERS, LLC,**

**ACCELERATED ACCOUNTING SERVICES LLC,** a Florida limited liability company,

**CHRISTOPHER L. MIANO,** individually and as the managing member of Accelerated Accounting Services LLC, and

**DANA M. MIANO,** individually and as the managing member of A+ Financial Center, LLC,

    Defendants.

---

## PRELIMINARY INJUNCTION

Plaintiff, the Federal Trade Commission ("FTC"), has filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 (Doc. No. 1), and has moved, pursuant to Federal Rule of Civil Procedure 65(b), for a Temporary Restraining Order, Asset Freeze, Appointment of a Temporary Receiver, Immediate Access, Other Equitable Relief, and an Order to Show Cause Why a Preliminary Injunction

Should Not Issue against Defendants A+ Financial Center, LLC, also d/b/a Accelerated Financial

Centers, LLC; Accelerated Accounting Services LLC; Christopher L. Miano; and Dana M.

Miano (Doc. No. 2). This Court, having considered the Complaint, declarations, exhibits, and

memoranda, entered a Temporary Restraining Order, including an asset freeze and appointment

of a receiver, on October 24, 2012.

## I.   **FINDINGS**

The Court, having considered the Complaint, the *ex parte* motion for a restraining order

and request for Preliminary Injunction, and all declarations, exhibits, and the memorandum of

points and authorities attached in support, Defendants' Memorandum in Opposition to Issuance

of a Preliminary Injunction and Motion to Modify Temporary Restraining Order, and the

evidence and arguments presented at the October 29, 2012 hearing in this action, and being

otherwise advised, finds that:

A.   This Court has jurisdiction over the subject matter of this case, and there is good cause to

believe that it will have jurisdiction over all parties hereto, and that venue in this district

is proper.

B.   Given the way in which the issues addressed herein arise, the Defendants give the Court

no choice but to grant the FTC's requested relief. Specifically, during the hearing held on

October 29, 2012, the Defendants agreed to the entry of a preliminary injunction against

them in this matter that mirrors the terms and requirements set forth in the Temporary

Restraining Order ("TRO") previously entered by the Court on October 24, 2012 except

for the following modifications:

1.   Defendants request the opportunity to re-enter the business with a

limited number of employees for the purpose of attempting to secure

2

lowered credit card interest rates for consumers who recently purchased Defendants' services but for whom Defendants have not yet had a chance to attempt to secure lowered credit card interest rates;

2. Defendants request the Court to authorize payment of outstanding wages owed to Defendants' employees;

3. Defendants request the release of funds currently subject to the asset freeze to allow the individual Defendants to pay their living expenses and to pay their attorneys to defend this action.

C. Defendant Christopher Miano's testimony during the hearing conducted on October 29, 2012, that: 1) only 83 clients out of approximately 20,000 clients initiated complaints; 2) the Defendants customer satisfaction ratio is very high; 3) the chargeback/ refund rate is approximately 27%; and 4) in fact the Defendants have substantially provided the services bargained for by the customers as represented by the Defendants, may suggest that this is a legitimate business with only technical violations. However, with respect to the injunction, because the Defendants agree to the FTC's requested relief, the testimony presented only addressed and may only be considered to the extent of the requested modification. Notwithstanding the agreement of the Defendants to the injunction and the testimony during the hearing, it would appear there may be cause to believe that the Defendants' position is that injunctive relief should not be granted. The Court has provided a mechanism to address this concern in paragraph XXIX.

D. Relying upon the evidence presented before the Court, there is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule

entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, and that the FTC is therefore likely to prevail on the merits of this action. As demonstrated by the Consumer Declarations submitted in connection with the motion for a Temporary Restraining Order, the FTC undercover call transcripts, as well as the additional documentation filed by the FTC in support of its motion for a TRO and submitted at the Preliminary Injunction hearing, the FTC has established a likelihood of success in showing that the Defendants have made unqualified, material misleading representations to consumers regarding the services Defendants could provide. First, Defendants' false representations that they can reduce the interest rates on consumers' credit cards to between 0% and 6% regardless of the bank that issued the credit card and save consumers $1,200 to $4,000 in interest payments in one year violate Parts 310.3(a)(2)(iii) and 310.3(a)(2)(x) of the TSR, which prohibits Defendant from "[m]isrepresenting, directly or by implication, in the sale of goods or services . . . (iii) [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer [and] (x) [a]ny material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service [and] the amount of time necessary to achieve the represented results . . . ." 16 C.F.R. § 310.3(a)(2)(iii) & (x).[1] In addition, Defendants' pervasive practice of collecting an up-front fee from the consumer before they have obtained lowered credit card interest rates on the consumer's credit cards violates Part 310.4(a)(5)(i) of the TSR, which prohibits "[r]equesting or receiving payment of any fee . . . for any debt relief service

---

[1] Defendants' credit card interest rate reduction services constitute a "debt relief service," which is defined in the TSR as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors . . . , including, but not limited to, a reduction in the . . . interest rate . . . ." 16 C.F.R. § 310.2(m).

until and unless . . . [t]he seller or telemarketer has renegotiated, settled, reduced, or

otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt

management plan, or other such valid contractual agreement executed by the customer

[and] [t]he customer has made at least one payment pursuant to that settlement

agreement, debt management plan, or other valid contractual agreement between the

customer and the creditor or debt collector . . . ." 16 C.F.R. § 310.4(a)(5)(i).[2] Defendants

have also violated the TSR by initiating, or causing a telemarketer to initiate, numerous

illegal telemarketing calls: (1) to telephone numbers listed on the National Do Not Call

Registry, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B); (2) that fail to provide an

accurate caller identification name and telephone number, in violation of 16 C.F.R. §

310.4(a)(8); (3) that deliver prerecorded messages to consumers who had not previously

provided Defendants with an express written agreement authorizing the placement of

prerecorded calls to them, in violation of 16 C.F.R. § 310.4(b)(1)(v); (4) that fail to

disclose truthfully and promptly Defendants' true identity and that the purpose of the call

is to sell goods or services, in violation of 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and

310.4(d); and (5) without first paying the required annual fee for access to the National

Do Not Call Registry, in violation of 16 C.F.R. § 310.8. *See, e.g.,* PX 1-1 to 1-3; PX 1-5;

PX 1-7 to PX 1-16; PX 2-1, ¶¶5, 9, 16-25 & Attachments A6-A19, A23, B, D5-D7, D9-

D11, D16, I; PX 3-3 at DOACS 000223-224, 226-227, 236; PX 3-4; PX 3-5; PX 4-1, PX

4-2; PX 4-3.

---

[2] The TSR's prohibition against collection of advance fees for debt relief services was implemented in 2010 to respond to this common abusive practice in the industry. *See Telemarketing Sales Rule*, 75 Fed. Reg. 48464, 48465 (Aug. 10, 2010).

E.   There is good cause to believe that Consumers will suffer immediate and irreparable harm from Defendants' ongoing violations of Section 5(a) of the FTC Act and the TSR unless Defendants are restrained and enjoined by Order of this Court.

F.   There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for Consumers (including monetary restitution, rescission, disgorgement, or refunds) will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their Assets, Documents, records, or other evidence unless Defendants are restrained and enjoined by Order of this Court until final judgment is entered in this action.

G.   Good cause exists for permitting the FTC access to Defendants' business premises, and permitting the FTC to take expedited discovery.

H.   Good cause also exists for the continued appointment of a Receiver over Corporate Defendants, the freezing of Defendants' Assets, and the ancillary relief ordered herein.

I.   The FTC has demonstrated a likelihood that Defendants Christopher L. Miano and Dana Miano are individually liable and properly subject to an asset freeze. *See F. T. C. v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir. 1996). Specifically, there is evidence that Defendants Christopher Miano and Dana Miano have the ability to control the Corporate Defendants. Christopher Miano is the general manager of both A+ and Accelerated Accounting. (PX3-3 at DOACS 000194.) In his role as general manager, Chris Miano runs both A+ and Accelerated Accounting on a day-to-day basis including, among other things: managing all employees; handling the finances of the business; and addressing regulatory compliance with state authorities. (*Id.*) Chris Miano has signatory authority for bank accounts held in A+'s and Accelerated Accounting's names (PX 2-3 at

BOFA-000012-13, 31, 34, 396-97, 413, 415, 505, 507, 793-94, 1383, 1385), has signed

checks on behalf of A+ (PX 4-1 at WPBBB-000059, 64), and has signed responses

submitted to the Better Business Bureau as the "GM" of A+ (*Id.* at WPBBB-000005, 56,

62, 69, 73, 76, 118, 122, 124, 130).  Chris Miano is also listed as the subscriber for the

telephone numbers used by A+ and Accelerated Accounting.  (PX 2-4 at EARTHLINK

000001.)  Chris Miano is currently the sole Managing Member of Accelerated

Accounting (PX 2-7 at FLSTATE 00020) and has previously served as the sole

Managing Member of A+ (PX 2-6 at FLSTATE 000007).  Dana Miano is the wife of

Chris Miano and is the sole Managing Member of A+ (*id.* at FLSTATE 000015).  She

has been described by Chris Miano as the "owner" of A+ (PX 3-3 at DOACS 000194).

Dana Miano has signed numerous legal documents and regulatory filings on behalf of

both A+ and Accelerated Accounting (*id.* at DOACS 000197-200; PX 2-6 at FLSTATE

000002, 5, 7, 10-11, 14-15; PX 2-7 at 17-18; PX 3-2 at DOACS 000097-103, 109-10,

112, 119, 150, 154, 173, 187), and she has signature authority on bank accounts held in

the names of both A+ and Accelerated Accounting (PX 2-3 at BOFA-000007-9, 31, 34,

413, 415-16, 473-75, 507-08, 1383, 1385).  Dana Miano is also listed as the registrant

and technical, billing, and administrative contact for A+'s website –

www.aplusfinancialcenters.com.  (PX 2-5 at GD004322.)  In addition, Dana Miano has

previously been the sole Managing Member of Accelerated Accounting.  (PX 2-7 at

FLSTATE 000017-18.)

J.   Weighing the equities and considering the FTC's likelihood of ultimate success on the

merits, it is in the public interest that the Court enter a Preliminary Injunction that will

remain in effect until final judgment is entered in this action that:  (1) enjoins Defendants

from making misrepresentations, failing to make disclosures of Material facts, and violating the TSR; (2) appoints a Receiver over the Corporate Defendants; (3) freezes Defendants' Assets; and (4) provides other equitable relief.

K.       The FTC is an independent agency of the United States of America and therefore, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, no security is required for issuance of a preliminary injunction.

## II.    **DEFINITIONS**

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.       **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of Consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant, including such reserve funds held by payment processors, credit card processors, banks, or other Financial Institutions.

B.       **"Assisting Others"** includes providing any of the following goods or services to another entity:  (1) performing customer service functions, including charging Consumers for products or services, or receiving or responding to Consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential

8

customers; (4) performing or providing marketing or billing services of any kind; (5)

processing credit and debit card payments; or (6) acting as an officer, director, manager,

or member of a business, corporation, or other entity.

C.     **"Clear and Conspicuous"** means:

1.     In print communications, the message shall be presented in a manner that stands

out from the accompanying text, so that it is sufficiently prominent, because of its

type size, contrast to the background against which it appears, location, or other

characteristics, for an ordinary Consumer to notice, read, and comprehend it in

relation to any claim it may be modifying;

2.     In communications made through an electronic medium (e.g., television, Internet,

telephone, etc.), the message shall be presented simultaneously in both the audio

and visual portions of the communication.  In any communication presented

solely through visual or audio means, the message shall be made through the same

means in which the communication is presented.  In any communication

disseminated by means of an interactive electronic medium (e.g., Internet), a

disclosure must be unavoidable and presented prior to the Consumer incurring

any financial obligation.  Any audio message shall be delivered in a volume and

cadence sufficient for an ordinary Consumer to hear and comprehend it in relation

to any claim it may be modifying.  Any visual message shall be presented in a

manner that stands out in the context in which it is presented, so that it is

sufficiently prominent, because of its size and shade, contrast to the background

against which it appears, length of time it appears on the screen, and its location,

for an ordinary Consumer to notice, read, and comprehend it in relation to any claim it may be modifying; and

3.  Regardless of the medium used to disseminate it, the message shall be in understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

D.  **"Consumer"** means any Person.

E.  **"Corporate Defendants"** means A+ Financial Center, LLC, also d/b/a Accelerated Financial Centers, LLC and Accelerated Accounting Services LLC, as well as their divisions, subsidiaries, affiliates, predecessors, successors, and assigns.

F.  **"Debt Relief Product or Service"** means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation between a Person and one or more creditors or debt collectors, including a reduction in the balance, interest rate, or fees owed by a Person to a creditor or debt collector.

G.  **"Defendants"** means all of the Individual Defendants and Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

H.  **"Document"** or **"Documents"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and encompasses both paper documents and electronically stored information—including writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence (including email, instant messages, text messages, and other correspondence transmitted on cell phones, smart phones, and other mobile devices), photographs, audio and video recordings,

contracts, accounting data, advertisements (including advertisements placed on the Internet), FTP logs, server access logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business cancelled checks, check registers, bank statements, appointment books, computer records and files, mobile electronic records and files, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by Defendants into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of the term.

I.   **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

J.   **"FTC Act"** means the Federal Trade Commission Act codified at 15 U.S.C. §§ 41-58.

K.   **"Individual Defendants"** means Christopher L. Miano and Dana M. Miano.

L.   **"Material"** means likely to affect a Person's choice of, or conduct regarding, goods or services.

M.   **"National Do Not Call Registry"** means the registry of telephone numbers maintained by the FTC, pursuant to Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), of Persons who do not wish to receive Outbound Telephone Calls to induce the purchase of goods or services.

N.   **"Outbound Telephone Call"** means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

11

O.   **"Person"** shall be construed in its broadest sense and means both natural persons and artificial entities, including sole proprietorships, general partnerships, limited partnerships, joint ventures, limited liability partnerships, limited liability companies, corporations, sub-chapter S corporations, closely held corporations, professional corporations, business associations, business trusts, and all past and present officers, directors, managers, members, agents, employees, parent companies, subsidiaries, predecessors, successors, affiliates, assigns, divisions, or other persons acting or purporting to act on such person's behalf.

P.   **"Receiver"** or means the receiver appointed in Section XVI of this Order and any deputy receivers that shall be named by the receiver.

Q.   **"Representative"** or **"Representatives"** means Defendants' officers, directors, managers, members, agents, servants, employees, and attorneys, and any other Person or entity in active concert or participation with them, who receives actual notice of this Order by personal service or otherwise.

R.   **"Telemarketer"** means any person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

S.   **"Telemarketing"** means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

T.   **"Telemarketing Sales Rule"** or **"TSR"** means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

### III.   CONDUCT PROHIBITIONS REGARDING DEBT RELIEF PRODUCTS OR SERVICES

**IT IS HEREBY ORDERED** that, in connection with the marketing, advertising,

12

promotion, distribution, offering for sale, or sale of any Debt Relief Product or Service,

Defendants and their Representatives, whether acting directly or indirectly through any entity,

corporation, subsidiary, division, director, manager, member, affiliate, agent, independent

contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined

from:

A.    Misrepresenting or Assisting Others in misrepresenting, expressly or by implication, any

of the following:

1.    That Consumers who use any Debt Relief Product or Service will have the

interest rates on their credit cards reduced;

2.    That Consumers who use any Debt Relief Product or Service will save money as a

result of lowered credit card interest rates;

3.    That Consumers who use any Debt Relief Product or Service will be able to pay

off their debts much faster as a result of lowered credit card interest rates;

4.    That Consumers who use any Debt Relief Product or Service will be able to

obtain lower interest rates on any credit card, regardless of the bank that issued

the credit card;

5.    The amount of time it will take or is likely to take a Consumer who uses any Debt

Relief Product or Service to obtain any reductions on their credit card interest

rates or any renegotiation, settlement, modification, or other alteration of the

terms of any debt;

6.    The degree of success that any Defendant or any other Person has had in

providing or performing any Debt Relief Product or Service;

7.   The nature of any Defendant's or any other Person's relationship with any bank, credit card issuer, credit card company, secured or unsecured lender, or consumer credit reporting agency;

8.   The nature of any Defendant's or any other Person's relationship with any federal, state, or local government agency;

9.   Any Material restrictions, limitations, or conditions to purchase, receive, or use any Debt Relief Products or Services;

10.  Any Material terms regarding the total cost to purchase, receive, or use, and the quantity of, any goods or services that are subject to any sales offer; or

11.  Any other fact Material to a Consumer's decision to purchase any Debt Relief Product or Service; and

B.   Representing, or Assisting Others who are representing, expressly or by implication, the benefits, performance, or efficacy of any Debt Relief Product or Service, unless at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true.

## IV.   CONDUCT PROHIBITIONS REGARDING COLLECTION OF ADVANCE FEES

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any Debt Relief Product or Service, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from requesting or receiving payment of any fee or consideration from a Consumer for any Debt Relief Products or Services until and unless Defendants have renegotiated, settled, reduced, or otherwise altered the

terms of at least one debt pursuant to a settlement agreement, debt management plan, or other

such valid contractual agreement executed by the Consumer and the Consumer has made at least

one payment pursuant to that settlement agreement, debt management plan, or other valid

contractual agreement between the Consumer and the creditor or debt collector.

## V.    **CONDUCT PROHIBITIONS REGARDING TELEMARKETING**

**IT IS FURTHER ORDERED** that, in connection with Telemarketing of any product or

service, including any Debt Relief Product or Service, Defendants and their Representatives,

whether acting directly or through any entity, corporation, subsidiary, division, director,

manager, member, affiliate, agent, independent contractor, accountant, financial advisor, or other

device, are hereby restrained and enjoined from:

A.    Initiating, or causing others to initiate, an Outbound Telephone Call that misrepresents,

directly or by implication, in the sale of goods or services any Material aspect of the

performance, efficacy, nature, or central characteristics of goods or services that are the

subject of a sales offer, including lowered credit card interest rates the Consumer will

obtain by using any Debt Relief Product or Service;

B.    Initiating, or causing others to initiate, an Outbound Telephone Call that misrepresents,

directly or by implication, any Material aspect of any Debt Relief Products or Services,

including the amount of money or the percentage of the debt amount that a Consumer

may save by using such service and the amount of time necessary to achieve the

represented results;

C.    Initiating, or causing others to initiate, an Outbound Telephone Call to a Person whose

telephone number is on the National Do Not Call Registry;

15

D.    Initiating, or causing others to initiate, an Outbound Telephone Call that fails to transmit the telephone number and/or name of the Telemarketer or seller to any caller identification service in use by the recipient of the call;

E.    Initiating, or causing others to initiate, an Outbound Telephone Call that delivers a prerecorded message;

F.    Initiating, or causing others to initiate, an Outbound Telephone Call that fails to disclose truthfully, promptly, and in a Clear and Conspicuous manner to the Person receiving the call: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services;

G.    Initiating, or causing others to initiate, an Outbound Telephone Call that delivers a prerecorded message and fails to disclose truthfully, promptly, and in a Clear and Conspicuous manner to the Person receiving the call: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services;

H.    Initiating, or causing others to initiate, an Outbound Telephone Call to a telephone number within a given area code when Defendants have not, either directly or through another Person, paid the required annual fee for access to the telephone numbers within that area code that are included on the National Do Not Call Registry.

## VI.   <u>DISABLEMENT OF WEBSITES</u>

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, (1) any Person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, shall:

16

A.  Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any Debt Relief Product or Service, including www.aplusfinancialcenters.com and www.askaccelerated.com, cannot be accessed by the public;

B.  Prevent the destruction or erasure of any Internet website used by Defendant for the advertising, marketing, promotion, offering for sale, sale, or provision of any Debt Relief Product or Service, including www.aplusfinancialcenters.com and www.askaccelerated.com, by preserving such website in the format in which it is maintained currently; and

C.  Immediately notify in writing counsel for FTC of any other Internet website not listed in this Section that is operated or controlled by any Defendant.

## VII.   SUSPENSION OF INTERNET DOMAIN REGISTRATIONS

**IT IS FURTHER ORDERED** that any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any Debt Relief Product or Service, including www.aplusfinancialcenters.com and www.askaccelerated.com, and provide immediate notice to counsel for the FTC of any other Internet domain names registered by Defendants or their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device.

## VIII.   ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member,

17

affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of Consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

    1.    owned, controlled, or held, in whole or in part, by any Defendant;

    2.    held, in whole or in part, for the direct or indirect benefit of, any Defendant;

    3.    in the actual or constructive possession of any Defendant;

    4.    held by an agent of any Defendant as a retainer for the agent's provision of services to Defendants;

    5.    owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an officer, director, manager, or member.  This includes, but is not limited to, any Assets held by, for, or subject to access by, any Defendant at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title company, insurance company, commodity trading company, precious metal dealer, payment processor, credit card processor, acquiring bank, merchant bank, independent sales organization, third party

processor, payment gateway, or other Financial Institution or depository of any kind; or

6.      held in any account for which any Defendant is, or was on the date that this Order was signed, an authorized signor.

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, either individually or jointly, or subject to access by any Defendant;

C.      Obtaining a personal or secured loan encumbering the Assets in the name, individually or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant;

D.      Incurring liens or other encumbrances on real property, personal property, or other Assets in the name, individually or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant;

E.      Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager.  This includes, but is not limited to, any corporate bank card or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor;

F.      Cashing any checks from Consumers, clients, or customers of any Defendant;

**PROVIDED** that the Assets affected by this Section shall include all Assets of all Defendants existing as of the date this Order was entered or acquired after entry of this Order from any activity that is the subject of, or is prohibited by, this Order.

19

## IX.   DUTIES OF ASSET HOLDERS OF DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any Financial Institution, brokerage institution, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person served with a copy of this Order that (a) holds, controls, or maintains custody of any account or Asset of any Defendant, (b) holds, controls, or maintains custody of any Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, payment merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies or other entities, or (c) has held, controlled, or maintained custody of any such account or Asset at any time since the date of entry of this Order shall:

A.   Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Assets held by or on behalf of any Defendant, as well as all Documents or other property related to such Assets, except by further order of this Court;

B.   Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.   Provide the FTC's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth:

   1.   the identification number of each account or Asset:

      a)   titled in the name, individually or jointly, of any Defendant;

b)      held on behalf of, or for the benefit of, any Defendant;

c)      owned or controlled by any Defendant;

d)      associated with credit or debit charges made on behalf of any Defendant; or

e)      otherwise subject to access by any Defendant, directly or indirectly;

2.      the balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person or entity to whom such account or other Asset was remitted; and

3.      the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of the FTC or the Receiver, promptly provide the FTC and the Receiver with copies of all records or other Documents pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to such safe deposit boxes, commercial mail boxes, and storage facilities.

## X.      **FINANCIAL REPORTS**

**IT IS FURTHER ORDERED** that each Defendant, within three (3) days of service of this Order upon them, shall prepare and deliver to Counsel for the FTC and the Receiver:

A.      Completed financial statements on the forms attached to this Order as **Attachment A**

(Financial Statement of Individual Defendant) for themselves individually, and

**Attachment B** (Financial Statement of Corporate Defendant) for each business entity

under which they conduct business or of which they are an officer, director, member, or

manager and for each trust for which any Defendant is a trustee.  The financial statements

shall be accurate as of the date of entry of this Order and signed under penalty of perjury.

Each Defendant shall include in the financial statements all information requested in the

statements, including a full listing, verified under oath, of all funds and Assets, whether

located inside or outside of the United States, that are: (a) titled in the name of such

Defendant, jointly, severally, or individually; (b) held by any Person or entity for the

benefit of such Defendant; or (c) under the direct or indirect control of such Defendant.

Defendants shall attach to these completed financial statements copies of all local, state,

provincial, and federal income and property tax returns, with attachments and schedules,

as called for by the instructions to the financial statements.

B.      A completed statement, signed under penalty of perjury, of all payments, transfers, or

assignments of Assets worth $1,000 or more since January 1, 2009.  Such statement shall

include:  (1) the amount transferred or assigned; (2) the name of each transferee or

assignee; (3) the date of transfer or assignment; and (4) the type and amount of

consideration paid to Defendant.  Each statement shall specify the name and address of

each Financial Institution and brokerage firm at which Defendant has accounts or safe

deposit boxes.  Said statements shall include Assets held in foreign as well as domestic

accounts.

C.  A Defendant does not, however, have to provide information pursuant to this Section VIII (Financial Statements) if (1) the Defendant has already provided all such information pursuant to Section VII (Financial Statements) of the Temporary Restraining Order; and (2) the information provided has not changed.  If both of these conditions are met, the Defendant must provide a sworn statement to the Receiver and Counsel for the Commission stating that all information pursuant to Section VII of the Temporary Restraining Order has already been provided and further stating that such information has not changed since the information was initially provided.

## XI.  CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## XII.  FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within three (3) days following the service of this Order, each Defendant shall:

A.  Transfer to the territory of the United States and deliver to the Receiver all funds, Documents, and Assets located in foreign countries that are:  (1) titled in the name individually or jointly of any Defendant; (2) held by any Person or entity for the benefit of any Defendant, individually or jointly; or (3) under the direct or indirect control, whether individually or jointly, of any Defendant;

B.     Hold and retain all repatriated funds, Documents, and Assets and prevent any transfer, disposition, or dissipation whatsoever of any such Assets, accounts, funds, or Documents; and

C.     Provide the Counsel for the FTC and the Receiver access to all records of accounts or Assets of any Defendant held by Financial Institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as **Attachment C**.

D.     A Defendant does not, however, have to provide the information, documents, or the release identified in this Section XII (Foreign Asset Repatriation) if (1) the Defendant has already provided such information, documents, or release pursuant to Section XII (Foreign Asset Repatriation) of the Temporary Restraining Order; and (2) the information provided or contained in the document or release has not changed.  If both of these conditions are met, the Defendant must provide a sworn statement to the Receiver and Counsel for the Commission stating that all information pursuant to Section XII of the Temporary Restraining Order has already been provided and further stating that such information has not changed since the information was initially provided.

## XIII.   NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section XII of this Order, including:

A.     Sending any statement, letter, fax, email, or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to Section XII of this Order; and

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to Section XII of this Order.

## XIV.   PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

A.     Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any

25

Defendant, (2) the business practices or finances of entities directly or indirectly under the control of any Defendant, or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant, including: any and all Marketing Materials, World Wide Web pages, Consumer complaints, rate decks, call detail records, telephone logs, telephone scripts, contracts, correspondence, email, corporate books and records, accounting data, financial statements, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, calendars, appointment books, and tax returns;

B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets; and

C.    Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing counsel for the FTC with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, members, and employees; and (4) a detailed description of the business entity's intended activities.

### XV.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from selling, renting, leasing, transferring, using, disclosing, or otherwise

26

benefitting from the name, address, telephone number, credit card number, bank account

number, email address, or other identifying information of any Person that any Defendant

obtained prior to entry of this Order in connection with any activity that pertains to the subject

matter of this Order; provided, however, that Defendants may disclose such identifying

information to a law enforcement agency or as required by any law, regulation, or court order.

## XVI.   APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Frank Scruggs, Esq. of the law firm Berger

Singerman LLP, previously appointed as temporary receiver for the Corporate Defendants, shall

continue as Receiver for the Corporate Defendants and any of their affiliates, subsidiaries,

divisions, or telephone sales or customer service operations, wherever located, with the full

power of an equity receiver.  The Receiver shall be the agent of this Court, and solely the agent

of this Court, in acting as Receiver under this Order.  The Receiver shall be accountable directly

to this Court.

## XVII.  RECEIVER'S DUTIES AND AUTHORITIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to

accomplish the following:

A.     Assume full control of Corporate Defendants by removing, as the Receiver deems

necessary or advisable, any director, officer, manager, member, independent contractor,

employee, or agent of any of Corporate Defendants, including any Defendant, from

control of, management of, or participation in, the affairs of Corporate Defendants;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the

possession, custody, or under the control of, Corporate Defendants, wherever situated.

The Receiver shall have full power to divert mail and to sue for, collect, receive, take in

27

possession, hold, and manage all Assets and Documents of Corporate Defendants and

other Persons or entities whose interests are now under the direction, possession, custody,

or control of Corporate Defendants.  The Receiver shall assume control over Corporate

Defendants' income and profits and all sums of money now or hereafter due or owing to

Corporate Defendants.  Provided, however, that the Receiver shall not attempt to collect

any amount from a Consumer if the Receiver believes the Consumer was a victim of the

unfair or deceptive acts or practices or other violations of law alleged in the Complaint in

this matter, without prior Court approval;

C.    Take all steps necessary to secure and take exclusive custody of each location from which

Corporate Defendants operate their businesses.  Such steps may include, but are not

limited to, any of the following, as the Receiver deems necessary or advisable:

(1) serving this Order; (2) completing a written inventory of all Assets of Corporate

Defendants; (3) obtaining pertinent information from all employees and other agents of

Corporate Defendants, including the name, home address, Social Security Number, job

description, company history, passwords or access codes, method of compensation, and

all accrued and unpaid commissions and compensation of each such employee or agent;

(4) photographing and videotaping any or all portions of the location; (5) securing the

location by changing the locks and disconnecting any computer modems or other means

of access to the computer or other records maintained at that location; and (6) requiring

any Persons present on the premises at the time this Order is served to leave the premises,

to provide the Receiver with proof of identification, or to demonstrate to the satisfaction

of the Receiver that such Persons are not removing from the premises Documents or

Assets of Defendants.  Law enforcement personnel, including police or sheriffs, may

assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

D.   Conserve, hold, and manage all Assets of Corporate Defendants, and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to Consumers or creditors of Corporate Defendants, including obtaining an accounting of the Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

E.   Enter into and cancel contracts, and purchase insurance as advisable or necessary;

F.   Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and creditors who have transacted business with Corporate Defendants;

G.   Manage and administer the business of Corporate Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes, but is not limited to, retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.   Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Corporate Defendants;

I.   Take all steps necessary to ensure that any of Corporate Defendants' web pages or websites relating to Debt Relief Products or Services, including www.aplusfinancialcenters.com and www.askaccelerated.com, cannot be accessed by the public, or are modified for Consumer education and/or informational purposes;

J.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by Corporate Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of Corporate Defendants, such as rental payments;

L.     Suspend business operations of Corporate Defendants if in the judgment of the Receiver such operations cannot be continued legally or profitably;

M.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of Corporate Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

N.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against Corporate Defendants, as the Receiver deems necessary and advisable to preserve the Assets of Corporate Defendants or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

O.  Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

P.  Open one or more bank accounts as designated depositories for funds of Corporate Defendants. The Receiver shall deposit all funds of Corporate Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

Q.  Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.  Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S.  File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

## XVIII. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and any other Person with possession, custody, or control of property of or records relating to Corporate Defendants shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.  All Assets of Corporate Defendants;

B.  All Documents of Corporate Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents, and other papers;

31

C.   All computers, electronic devices, and machines and data in whatever form used to conduct the business of Corporate Defendants;

D.   All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of Corporate Defendants; and

E.   All keys, codes, user names, and passwords necessary to gain or to secure access to any Assets or Documents of Corporate Defendants, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any Person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XIX.   <u>PROVISION OF INFORMATION TO RECEIVER</u>

**IT IS FURTHER ORDERED** that Defendants shall provide to the Receiver, immediately upon request, the following:

A.   A list of all Assets and property, including accounts, of Corporate Defendants that are held in any name other than the name of a Corporate Defendant, or by any Person or entity other than a Corporate Defendant; and

B.  A list of all agents, employees, officers, directors, managers, members, servants, or those Persons in active concert and participation with Defendants, who have been associated or done business with Corporate Defendants.

C.  A Defendant does not, however, have to provide information pursuant to this Section XIX (Provision of Information To Receiver) if (1) the Defendant has already provided all such information pursuant to Section XIX (Provision of Information To Receiver) of the Temporary Restraining Order; and (2) the information provided has not changed.  If both of these conditions are met, the Defendant must provide a sworn statement to the Receiver and Counsel for the Commission stating that all information pursuant to Section XIX of the Temporary Restraining Order has already been provided and further stating that such information has not changed since the information was initially provided.

## XX.  <u>COOPERATION WITH THE RECEIVER</u>

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and any other Person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of Corporate Defendants.  This cooperation and assistance shall include, but not be limited to: (A) providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; (B) providing any password required to access any computer, electronic file, or telephonic data in any medium; (C) advising all Persons who owe money to Corporate Defendants that all debts should be paid directly to the Receiver; and (D) transferring funds at the Receiver's direction and producing records related to the Assets and sales of Corporate Defendants.  The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-

dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, and other Financial Institutions and depositories of any kind, as well as all common carriers, telecommunications companies, and third-party billing agents.

## XXI.   INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A.    Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this receivership;

B.    Transacting any of the business of Corporate Defendants;

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, Corporate Defendants or the Receiver; and

D.    Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXII.   STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the receivership ordered herein, Defendants, their Representatives, corporations, subsidiaries,

34

divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers, and other Persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such Persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of Corporate Defendants, including:

A.     Petitioning, or assisting in the filing of a petition, that would cause any Corporate Defendant to be placed in bankruptcy;

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against Corporate Defendants, including the issuance or employment of process against Corporate Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.     Filing or enforcing any lien on any Asset of Corporate Defendants, taking or attempting to take possession, custody, or control of any Asset of Corporate Defendants, or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of Corporate Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

D.     Initiating any other process or proceeding that would interfere with the Receiver's efforts to manage or take custody, control, or possession of the Assets or Documents subject to this receivership.

**PROVIDED THAT**, this Order does not stay:  (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an

action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

### XXIII. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Corporate Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### XXIV. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall, if he has not already done so, file with the Clerk of this Court a bond in the sum of $15,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

### XXV. ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the FTC and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery:

A.     The FTC and Receiver and their counsel, agents, representatives, contractors, and
       assistants shall continue to have access to the business premises and storage facilities of

Corporate Defendants, including the offices located at 10256 and 10258 South U.S. Highway 1, Port Saint Lucie, Florida 34952;

B.   The FTC and Receiver and their counsel, agents, representatives, contractors, and assistants are authorized to remove Documents from Corporate Defendants' premises in order that they may be inspected, inventoried, and copied for the purpose of preserving discoverable material in connection with this action;

C.   Defendants and all agents or employees of Defendants shall provide the FTC and the Receiver with any necessary means of access to Documents including, without limitation, the locations of Corporate Defendants' business premises and storage facilities, keys and combinations to Corporate Defendants' business premises or storage facility locks, computer access codes of all computers used to conduct Corporate Defendants' business, and storage area access information;

D.   If any property, records, Documents, or computer files relating to Corporate Defendants' finances or business practices are located in the residence of any Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to counsel for the FTC and the Receiver within twenty-four (24) hours of service of this Order, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order upon Defendants, any such computers shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be powered up or used again until produced for copying and inspection;

E.   In the event any Corporate Defendants' Documents have been removed from Corporate Defendants' business premises or storage facilities by, and are in the possession of any

other law enforcement or investigative agency, the FTC may have immediate access to such Documents for purposes of inspection, indexing, and copying, subject to the agency consenting to access by the FTC;

F.   The FTC and the Receiver and their counsel, agents, representatives, contractors, and assistants are authorized to obtain the assistance of the U.S. Marshal's office and other federal, state, and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

G.   The FTC's or the Receiver's access to Corporate Defendants' Documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for Documents served by the FTC; and

H.   The Receiver shall allow Defendants reasonable access to the business premises and business records of Corporate Defendants within his possession for the purpose of inspecting and copying materials relevant to this action, although the Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XXVI. **DISTRIBUTION OF ORDER BY DEFENDANTS**

**IT IS FURTHER ORDERED** that:

A.      Defendants shall immediately, if they have not already done so, provide a copy of this Order to each Representative, affiliate, Telemarketer, customer service agent, sales entity, sale agent, distributor, subsidiary, successor, assign, officer, director, member, manager, employee, independent contractor, client company, agent, spouse, and attorney of any Defendant, as well as to any other entity or Person who participates in the marketing, advertising, promotion, distribution, offer for sale, or sale of Debt Relief Products or Services;

B.      Within three (3) days from the date of entry of this Order, Defendants shall, if they have not already done so, provide the FTC and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone numbers, and e-mail addresses of each such Person or entity who received a copy of the Order; and

C.      Defendants shall not take any action that would encourage officers, agents, members, managers, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other Persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

## XXVII.        **EXPEDITED DISCOVERY**

**IT IS FURTHER ORDERED** that, notwithstanding the time periods, notice provisions, and other requirements of Rules 26(d), 26(f), and 30(a)(2)(c) of the Federal Rules of Civil Procedure, and pursuant to Federal Rules of Civil Procedure 30(a), 34, and 45, the FTC and the

Receiver are granted leave, at any time after entry of this Order, to conduct limited expedited discovery as to parties and non-parties for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the nature and location of Documents reflecting Defendants' businesses, business transactions, and operations; (3) the telecommunications providers that Defendants utilize to conduct the practices alleged in the FTC's complaint; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A.    The FTC and the Receiver may, on three (3) days of notice, take the deposition of any Person, whether or not a party, in any judicial district. Depositions may be conducted telephonically or in person. Deposition transcripts that have not been signed by the witness may be used at the preliminary injunction hearing in this matter. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) of the Federal Rules of Civil Procedure.

B.    The FTC and the Receiver may serve interrogatories upon Defendants, and Defendants shall respond within three (3) days after the FTC and/or the Receiver serves such interrogatories. The service of interrogatories pursuant to this Section, notwithstanding Rule 33(a)(1) of the Federal Rules of Civil Procedure, shall not preclude the FTC and/or the Receiver from serving any future interrogatories upon Defendants in this action.

C.   The FTC and the Receiver may, upon three (3) days' notice, including through the use of a Rule 45 subpoena, demand the production of Documents from any Person, whether or not a party.

D.   The FTC and the Receiver is granted leave to subpoena Documents immediately from any Financial Institution, account custodian, or other entity or Person that holds, controls, or maintains custody of any account or Asset of any Defendant, or has held, controlled, or maintained custody of any account or Asset of any Defendant concerning:  (1) the nature, location, status, and extent of any Defendant's Assets; and (2) compliance with this Order.  Such Financial Institution, account custodian, or other entity shall respond to such subpoena within three (3) business days after service.

E.   For purposes of discovery pursuant to this Section, service shall be sufficient if made by facsimile or by overnight courier.

F.   Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court.

G.   The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) and (f) of the Federal Rules of Civil Procedure.

H.   The Parties are exempted from making initial disclosures under Federal Rule of Civil Procedure 26(a)(1) until further order of this Court.

## XXVIII.   <u>SERVICE OF THIS ORDER</u>

**IT IS FURTHER ORDERED** that copies of this Order may be served on any Person (including any Financial Institution) that may have possession, custody, or control of any

property, property right, Document, or Asset of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, by any means, including U.S. First Class Mail, overnight delivery, facsimile, email, or personal service, by agents or employees of the FTC, by agents or employees of the Receiver, by any law enforcement agency, by private process server, or by any Person or entity permitted by the Federal Rules of Civil Procedure to effect service. For purposes of this Section, service upon any branch, subsidiary, affiliate, or office of any entity shall effect service upon the entire entity. This Order shall bind Persons (including entities) that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure upon such Person's receipt of actual notice, by personal service or otherwise, of this Order.

## XXIX. RECONSIDERATION OF THIS ORDER

**IT IS FURTHER ORDERED** that if the Defendants are willing to agree to comply with the restrictions as outlined by the FTC and contained herein, with the oversight of the Receiver, and can convince the Court, as testified to during the hearing held on October 29, 2012, that: 1) only 83 clients out of approximately 20,000 clients initiated complaints; 2) the Defendants customer satisfaction ratio is very high; 3) the chargeback/ refund rate is approximately 27%; and 4) in fact the Defendants have substantially provided the services bargained for by the customers as represented by the Defendants, then the Court is willing to reconsider its ruling. The Defendants must present evidence for the Court's consideration rather than mere conclusory assertions. The FTC should be prepared to rebut any such evidence with more than mere affidavits. If the Defendants request a hearing before the Court to present additional evidence, the parties should confer and provide the Court with a detailed schedule outlining the issues to be addressed and the evidence to be presented.

### XXX.   CORRESPONDENCE AND SERVICE ON THE FTC

**IT IS FURTHER ORDERED** that, for the purpose of this Order, because mail addressed to the FTC is subject to delay due to security screening, all correspondence and service of pleadings on the FTC shall be sent either via electronic transmission or via FedEx to:

> Bikram Bandy (bbandy@ftc.gov)
> William T. Maxson (wmaxson@ftc.gov)
> Federal Trade Commission
> 600 Pennsylvania Avenue NW
> Mail Stop H-286
> Washington, DC 20580
> (202) 326-2978 (Bandy phone)
> (202) 326-2635 (Maxson phone)
> (202) 326-3395 (fax)

### XXXI.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS FURTHER ORDERED** that Defendants' Motion to Modify Temporary Restraining Order is **DENIED without prejudice**. Without a detailed report from the Receiver addressing the assets subject to the freeze and the contemplation of additional recovery of assets, the Court cannot rule at this time on Defendants' request for an allowance for attorney's fees and living expenses. Additionally, Defendants have not provided the Court with an indication as to the amount of reasonable living expenses, based upon a detailed living expense report, and the amount of attorney's fees and costs being requested.

**IT IS SO ORDERED**:

DATED: /1st day of November, 2012

The Honorable Donald L. Graham
UNITED STATES DISTRICT JUDGE