UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  12-CV-14373-DLG

FEDERAL TRADE COMMISSION,

     Plaintiff,

    v.

A+ FINANCIAL CENTER, LLC, a Florida
limited liability company, also doing business as
ACCELERATED FINANCIAL CENTERS,
LLC,

ACCELERATED ACCOUNTING SERVICES
LLC, a Florida limited liability company,

CHRISTOPHER L. MIANO, individually and
as the managing member of Accelerated
Accounting Services LLC, and

DANA M. MIANO, individually and as the
managing member of A+ Financial Center, LLC,

     Defendants.

## STIPULATED FINAL JUDGMENT AND
## ORDER FOR PERMANENT INJUNCTION

On October 23, 2012, Plaintiff, the Federal Trade Commission ("FTC"), filed its

Complaint [D.E. 1] for permanent injunction and other relief pursuant to Sections 13(b) and 19

of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the

Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15

U.S.C. §§ 6101-6108, charging Defendants A+ Financial Center, LLC, Accelerated Accounting

Services, LLC, Christopher L. Miano, and Dana M. Miano with violating Section 5 of the FTC

Act, 15 U.S.C. § 45, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

1

Plaintiff FTC and Defendants have all agreed to the entry of this Stipulated Final Judgment and Order for Permanent Injunction ("Order") by this Court to resolve all matters of dispute between them in this action.

   **NOW, THEREFORE,** Plaintiff FTC and Defendants, through their respective counsel, having filed a joint motion requesting the Court to enter this Order,

   **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

## I.     FINDINGS

A.     This Court has jurisdiction over the subject matter and the parties.

B.     Venue is proper as to all parties in the Southern District of Florida.

C.     This is an action by the FTC instituted under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the Telemarketing Act, 15 U.S.C. §§ 6101-6108, and the TSR, 16 C.F.R. Part 310.  Pursuant to these Sections of the FTC Act and the Telemarketing Act, the Commission has the authority to seek the relief contained herein.

D.     Defendants' activities are or were in or affecting commerce, as defined in the FTC Act, 15 U.S.C. § 44.

E.     Defendants are Telemarketers and/or sellers for the purposes of the TSR.

F.     The FTC's Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a)(1), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1), 53(b), and 57b; Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b); and the TSR, 16 C.F.R. Part 310.

G.     Defendants have waived any and all rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412, amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), pertaining to any claim by the FTC arising out of this case.

H.     The FTC and Defendants shall each bear their own costs and attorneys' fees incurred in this action.

I.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

J.     Plaintiff FTC and Defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order. Defendants further waive and release any claim they may have against the FTC, its employees, agents, and representatives arising out of this action and under the terms of this Order.

K.     Defendants all waive their share of any and all claims to the Assets of A+ Financial Center, LLC, also doing business as Accelerated Financial Centers, LLC, and Accelerated Accounting Services LLC, including any Assets currently in possession of the Receiver appointed by the Court in this matter, Frank Scruggs, Esq., and further stipulate that their share of any of these Assets are to be transferred to the FTC to be used for equitable relief, as described in Section X (Equitable Monetary Relief).

L.     Defendants have entered into this Order freely and without coercion. Defendants further acknowledge that they have read the provisions of this Order and are prepared to abide by them.

M.     Entry of this Order is in the public interest.

N.     The parties stipulate and agree to the entry of this Order, without trial or final adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date of entry of this Order. This settlement does not resolve any matters not alleged in the Complaint. Defendants neither admit nor deny any of the

allegations set forth in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

O.     There is no just reason for delaying entry of this Order. Pursuant to Federal Rule of Civil Procedure 54, this Order directs the entry of final judgment as to all of the claims the FTC alleged in the Complaint against Defendants.

## II.     DEFINITIONS

Each of the terms defined below refer to either the singular or plural, as appropriate to the context in which they appear.

A.     "**Asset**" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant, including such reserve funds held by payment processors, credit card processors, banks, or other Financial Institutions.

B.     "**Assisting Others**" includes providing any of the following goods or services to another entity: (1) performing customer service functions, including charging consumers for products or services, or receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing or providing marketing or billing services of any kind; (5) processing credit and debit

4

card payments; or (6) acting as an officer, director, manager, or member of a business, corporation, or other entity.

      C.      **"Corporate Defendants"** means A+ Financial Center, LLC, also d/b/a Accelerated Financial Centers, LLC; Accelerated Accounting Services LLC; their divisions, subsidiaries, predecessors, successors, and assigns; and any fictitious business entities or business names created or used by any of the entities included in this definition.

      D.      **"Debt Relief Product or Service"** means any product, service, plan or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a Person and one or more unsecured creditors or debt collectors, including a reduction in the balance, interest rate, or fees owed by a Person to an unsecured creditor or debt collector.

      E.      **"Defendants"** means all of the Individual Defendants and Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

      F.      **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and encompasses both paper documents and electronically stored information—including writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence (including email, instant messages, text messages, and other correspondence transmitted on cell phones, smart phones, and other mobile devices), photographs, audio and video recordings, contracts, accounting data, advertisements (including advertisements placed on the Internet), FTP logs, server access logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business cancelled checks, check registers, bank statements, appointment books,

5

computer records and files, mobile electronic records and files, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by Defendants into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of the term.

      G.    **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer

      H.    **"Financial Related Product or Service"** means any product or service. represented, directly or by implication, to:

1.    provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

2.    improve, or arrange to improve, any consumer's credit record, credit history, or credit rating;

3.    provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating;

4.    provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

5.    provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

I.      **"Individual Defendants"** means Christopher L. Miano and Dana M. Miano.

J.      **"Outbound Telephone Call"** means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

K.      **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

L.      **"Receiver"** means the receiver appointed by the Court in this matter, Frank Scruggs, Esq., and any deputy receivers that shall be named by the Receiver.

M.      **"Representative"** means Defendants' officers, directors, managers, members, agents, servants, employees, and attorneys, and any other Person or entity in active concert or participation with them, who receives actual notice of this Order by personal service or otherwise.

N.      **"Telemarketer"** means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

O.      **"Telemarketing"** means any plan, program, or campaign (whether or not covered by the TSR) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones. Provided, however, that "Telemarketing" does not include any plan, program, or campaign that involves only telephone calls made to, or received from, a business for the purpose of inducing or inquiring about the purchase of goods or services by the business or a charitable contribution by the business. Provided further that "Telemarketing" does include such calls made for the purpose of inducing the retail sale of nondurable office or cleaning supplies.

### III.   PERMANENT BAN ON ROBOCALLS

Defendants, whether acting directly or through any Person, are hereby permanently restrained and enjoined from initiating, or causing others to initiate, any telephone call that delivers a prerecorded message.

### IV.   PERMANENT BAN ON MARKETING DEBT RELIEF PRODUCTS OR SERVICES

Defendants, whether acting directly or through any Person, are hereby permanently restrained and enjoined from engaging in, participating in, or Assisting Others in the advertising, marketing, promotion, offering for sale,  sale, or distribution of any Debt Relief Product or Service.

### V.   PROHIBITED PRACTICEES RELATING TO FINANCIAL RELATED PRODUCTS OR SERVICES

In connection with the marketing, advertising, promotion, distribution, offering for sale, or sale of any Financial Related Products or Services, Defendants and their Representatives, whether acting directly or through any Person, are hereby permanently restrained and enjoined from:

A.   Misrepresenting or Assisting Others in misrepresenting, expressly or by implication, any material fact, including:

    1.   The terms or rates that are available for any loan or other extension of credit, including:

        a.   closing costs or other fees;

        b.   the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge; the loan amount, the amount of

credit, the draw amount, or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

    c.      the savings associated with the credit;

    d.      the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third party;

    e.      whether the payment of the minimum amount specified each month covers both interest and principal, and whether the credit has or can result in negative amortization;

    f.      that the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; and

    g.      that the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

2.      That any Person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

3.      Any Person's ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit;

4.      Any aspect of any mortgage loan modification service or foreclosure relief service, including the amount of savings or reduction in interest rate, loan principal, or monthly payment that a consumer will receive from purchasing,

using, or enrolling in such mortgage loan modification service or foreclosure relief service; the amount of time before a consumer will receive a mortgage loan modification or relief from foreclosure; the likelihood that a consumer will obtain a modified mortgage loan or relief from foreclosure; or the reduction or cessation of collection calls; and

5.     That a consumer will receive legal representation; and

B.     Advertising or Assisting Others in advertising credit terms other than those terms that actually are or will be arranged or offered by a creditor or lender.

## VI.   PROHIBITED MISREPRESENTATIONS RELATING TO GOODS OR SERVICES

In connection with the marketing, advertising, promotion, distribution, offering for sale, or sale of any goods or services, Defendants and their Representatives, whether acting directly or through any Person, are hereby permanently restrained and enjoined from:

A.     Misrepresenting or Assisting Others in misrepresenting, expressly or by implication, any of the following:

1.     The nature of any Defendant's or any other Person's relationship with any bank, credit card issuer, credit card company, secured or unsecured lender, or consumer credit reporting agency;

2.     The nature of any Defendant's or any other Person's affiliation with, endorsement by, approval by, sponsorship by, relationship with, or connection to: any other Person; government entity; public, non-profit, or other non-commercial program; or any other program;

3.     The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

4. Any material restrictions, limitations, or conditions to purchase, receive, or use goods or services that are the subject of a sales offer;

5. Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

6. Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any goods or services that are the subject of a sales offer; or

7. Any other fact material to a consumer's decision to purchase goods or services; and

B. Representing, or Assisting Others who are representing, expressly or by implication, the benefits, performance, or efficacy of any good or service, unless at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true.

## VII.   PROHIBITIONS REGARDING TELEMARKETING

In connection with Telemarketing of any product or service, Defendants and their Representatives, whether acting directly or through any Person, are hereby restrained and enjoined from:

A. Initiating, or causing others to initiate, an Outbound Telephone Call to a Person whose telephone number is on the National Do Not Call Registry;

B. Initiating, or causing others to initiate, an Outbound Telephone Call that fails to transmit the telephone number and/or name of the Telemarketer or seller to any caller identification service in use by the recipient of the call;

C. Initiating, or causing others to initiate, an Outbound Telephone Call that fails to disclose truthfully, promptly, and in a clear and conspicuous manner to the Person receiving the

call: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services;

D.  Initiating, or causing others to initiate, an Outbound Telephone Call to a telephone number within a given area code when Defendants have not, either directly or through another Person, paid the required annual fee for access to the telephone numbers within that area code that are included on the National Do Not Call Registry.

## VIII.  PROHIBITIONS REGARDING CONSUMER INFORMATION

Defendants and their Representatives, whether acting directly or through any Person, are permanently restrained and enjoined from:

A.  Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress.  If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within fourteen (14) days;

B.  Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any Person that was obtained by any Defendant in connection with the sale of any product or service during the period June 1, 2008 through December 31, 2012; and

C.  Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media,

to ensure that the customer information cannot practicably be read or reconstructed. *Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

### IX.  PROHIBITION ON COLLECTING ON ACCOUNTS

Defendants and their Representatives, whether acting directly or through any Person, are hereby restrained and enjoined from attempting to collect, collecting, or assigning any right to collect payment from any consumer who purchased or agreed to purchase any Debt Relief Product or Service from any Defendant.

### X.  EQUITABLE MONETARY RELIEF

Monetary judgment is entered in favor of the FTC and against Defendants, jointly and severally, for equitable monetary relief, including consumer redress and/or disgorgement, in the amount of nine million, two hundred thirty-eight thousand, one hundred fifty-five dollars and zero cents ($9,238,155.00), which is the total amount of consumer injury caused by the activities alleged in the FTC's complaint; *provided, however,* that based on the sworn representations in the financial statements of Christopher Miano (dated October 29, 2012 and March 3, 2015), Dana Miano (dated October 29, 2012, amended October 31, 2012 and November 9, 2012), and A+ Financial Center, LLC and Accelerated Accounting Services LLC (dated October 29, 2012, amended October 31, 2012), full payment of the foregoing amount shall be suspended upon Defendants' satisfaction of the obligations set forth in this Section, and subject to the conditions set forth in Section XI (Right to Reopen):

A.  Effective upon the entry of this Order, Defendants shall surrender to the FTC all control, title, dominion, and interest in the following Assets:

    1.  Corporate Defendants and all of Corporate Defendants' Assets;

2.    the proceeds from the court-approved liquidation of the 2007 Mercedes Benz CL Class (VIN #:  WDDEJ71X47A007356) previously registered to Christopher L. Miano;

3.    the proceeds from the court-approved liquidation of the 1999 watercraft, vessel number FL7303LD, hull number RGFJ0562G899, previously registered to Christopher L. Miano;

4.    the proceeds from the court-approved liquidation of the 2002 watercraft, vessel number 1138329, hull ID SERF9427K203, previously registered to Christopher L. Miano;

5.    all funds in the following bank accounts previously held at Bank of America in the name of any Defendant, individually or jointly with another Person:  accounts ending in 4783, 4796, 4914, and 5229; and

6.    all other Assets of any of Defendant in the possession of the Receiver.

B.    Notwithstanding the provisions set forth in Subparagraph A above, effective upon entry of this Order, Individual Defendants shall retain all control, title, dominion, and interest in the following Assets:

1.    all funds in the following bank accounts previously held in the name of any Defendant, individually or jointly with another Person:  Bank of America bank accounts ending in 5397 and 1536; PNC Bank bank account ending in 3667;

2.    the contents of the safe deposit box in the name of Dana Miano located at PNC Bank, 3201 Southwest Port Saint Lucie Boulevard, Port St. Lucie, FL 34953;

3.  the 2012 Infiniti QX56 (VIN #:  JN8AZ2NE1C9019655) registered to Dana M. Miano and the 2009 Hyundai Sonata (VIN #:  5NPET46CX9H522477) jointly registered to Dana M. Miano and Domenica Conte; and

4.  fourteen thousand, seven hundred forty-three dollars and fifty-nine cents ($14,743.59) of the equity in the 2002 watercraft, vessel number 1138329, hull ID SERF9427K203, registered to Christopher L. Miano, which amount shall be paid within five (5) days after entry of this Order by the Receiver to Defendants from the funds in the Receivership estate via certified check payable to the trust account of Dean Mead for the benefit of Individual Defendants.

C.  Time is of the essence for the obligations set forth in Subparagraph A above.  In the event of any default by Defendants on any obligation imposed under this Section:  (1) the Judgment imposed herein will not be suspended as to Defendants, and the full amount of that judgment, nine million, two hundred thirty-eight thousand, one hundred fifty-five dollars and zero cents ($9,238,155.00), shall immediately become due and payable, plus interest from the date of entry of this Order, pursuant to 28 U.S.C. § 1961, as amended, less any amounts already paid; and (2)  the FTC shall be entitled to immediately exercise any and all rights and remedies against Defendants and their Assets to collect the full amount of the judgment and interest thereon, less any amounts already paid.

D.  The Receiver shall, as soon as practicable upon receipt of the Assets and transfer of titles pursuant to Subsection A, commence their liquidation using a commercially reasonable procedure, and Defendants shall have no right to challenge said liquidation.  Any transfer fees, taxes, or other payments mandated from the transferor under state law shall be paid from the proceeds of each sale at the time each such Asset is sold.  Following liquidation

15

of such Assets, the Receiver shall forward the net proceeds as directed by the FTC, subsequent to the Receiver's disbursement authorized under Sections XIII and XIV of this Order.

E.     Any funds paid pursuant to this Section shall be deposited into a fund administered by the FTC or its agent to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. Defendants shall cooperate fully to assist the FTC in identifying consumers who may be entitled to redress pursuant to this Order. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the FTC may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement so long as the Court is provided with an accounting of all funds to be deposited into the United States Treasury prior to deposit. Defendants shall have no right to challenge the FTC's choice of remedies under this Section. Defendants shall have no right to contest the manner of distribution chosen by the FTC. This judgment for equitable monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture.

F.     Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

G.     Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation

pursued by the FTC to enforce its rights to any payment or money judgment pursuant to this Order, including a nondischargeability complaint in any bankruptcy case. Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

## XI.    RIGHT TO REOPEN

A.    The FTC's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and supporting Documents that Defendants submitted to the FTC as described in Section X (Equitable Monetary Relief) of this Order, as well as all subsequent addenda thereto, all of which Defendants assert were truthful, accurate, and complete at the time they were submitted.  Defendants and the FTC stipulate that these financial disclosures provide the bases for the Assets listed in Section X (Equitable Monetary Relief) of this Order, and include material information upon which the FTC relied in negotiating and agreeing to this Order.

B.    If, upon motion by the FTC, this Court finds that Defendants have failed to disclose any material Asset or materially misstated the value of any Asset in the financial statements or related Documents described above, or have made any other material misstatement or omission in the financial statements or related Documents described in Section X (Equitable Monetary Relief) of this Order, then this Order shall be reopened and suspension of the judgment shall be lifted for the purpose of requiring payment of monetary relief in the amount of nine million, two hundred thirty-eight thousand, one hundred fifty-five dollars and zero cents ($9,238,155.00), less the sum of any amounts paid to the FTC pursuant to Section X (Equitable Monetary Relief) of this Order.

***Provided, however,*** that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court.

C.      Upon any reinstatement of the monetary judgment, the Court shall make an express determination that the monetary judgment shall be immediately due and payable as to Defendants.  The FTC shall be entitled to interest on the judgment, computed from the day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as amended, on any outstanding amounts not paid.  The FTC shall be permitted to execute on the judgment immediately after the suspension is lifted and engage in discovery in aid of execution.

D.      Proceedings initiated under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any proceedings that the FTC may initiate to enforce this Order.  For purposes of this Section, Defendants waive the right to contest any of the allegations in the Complaint.

## XII.    LIFTING OF ASSET FREEZE

The freeze on the Assets of Defendant pursuant to Section VIII (Asset Freeze) of the Preliminary Injunction entered by this Court on November 1, 2012 [D.E. 23] shall remain in effect until Defendants have complied with all requirements set forth in Section X above, provided, however, that Defendants, with the express written consent of counsel for the FTC, may transfer funds to the extent necessary to make all payments required by Section X.  Once Defendants have fully complied with the requirements of Section X, the freeze against the Assets of the Individual Defendants shall be lifted permanently.  The freeze on the Assets of the Corporate Defendants shall remain in effect until such time as the Receiver receives payment of all Court-approved fees and expenses of the Receiver and the Receiver is discharged pursuant to Section XVI of this Order.  A Financial Institution shall be entitled to rely upon a letter from the FTC stating that the freeze on Defendants' Assets has been lifted.

### XIII.   RECEIVER'S DUTIES

Frank Scruggs, Esq., the Receiver appointed by the Preliminary Injunction [D.E. 23], is hereby appointed Receiver for Corporate Defendants for the purpose of taking the necessary steps to wind down the businesses of Corporate Defendants, liquidate their Assets, and pay any net Assets to the FTC to satisfy the monetary judgment entered by this Order.  The Receiver shall be the agent of this Court and shall be accountable directly to this Court.  In carrying out these duties, the Receiver is authorized and directed to:

A.   Take any and all steps that the Receiver concludes are appropriate to wind down Corporate Defendants and take such other steps as may be necessary to terminate and dissolve Corporate Defendants efficiently.  The incorporators and directors of the Corporate Defendants are ordered to cooperate with the Receiver in effectuating the dissolution of the Corporate Defendants.

B.   Provide the FTC, upon request, with any business records of Corporate Defendants that (1) identify consumers from whom Corporate Defendants collected payments, including the most recent known address, telephone number, and the amount of any fees paid by such consumers; and (2) identify consumers who received refunds from Corporate Defendants and the amount of the refunds.

C.   Continue to exercise full control of Corporate Defendants and continue to collect, marshal, and take custody, control and possession of all the funds, property, premises, accounts, Documents, mail, and other Assets of, or in the possession or under the control of, Corporate Defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to Corporate Defendants, with full power to collect, receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and

19

records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other Financial Institutions, and other papers and Documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody or control of Corporate Defendants (collectively, the "Receivership Estate").

D.   Dispose of, or arrange for the destruction of, the records of Corporate Defendants no later than one (1) year after the Court's approval of the Receiver's final report as to the Receivership Estate, except that:

1.   to the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to Corporate Defendants, and any refunds provided to individual consumers, to be retained for a minimum of two (2) years from the entry of this Order; and

2.   in accordance with Fla. Stat. § 608.4101 and any other Florida state or local law regulating Corporate Defendants' business that requires the retention of particular records for a specified period, the Receiver shall arrange for such records to be disposed of after the specified period has expired.

To safeguard the privacy of consumers, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner. For records that must be retained, the Receiver may elect to retain records in their original form, or to retain photographic or electronic copies.

E.   Continue to perform all acts necessary or advisable to complete an accounting of the Assets, and prevent unauthorized transfer, withdrawal, or misapplication of Assets.

F.   Make payments and disbursements from Corporate Defendants' estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order; *provided that* the Receiver shall not make any payments or disbursements without prior Court approval.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by Corporate Defendants prior to the date of entry of the Temporary Restraining Order [D.E. 10] in this action, except payments that the Receiver deems necessary or advisable to secure and liquidate Assets of Corporate Defendants, such as rental payments or payment of liens.

G.   Enter into contracts and purchase insurance as advisable or necessary; *provided that* the Receiver shall not make any payments or disbursements without prior Court approval.

H.   Perform all incidental acts that the Receiver deems to be advisable or necessary, which include retaining, hiring, or dismissing any employees, independent contractors, and agents as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the statutory authority granted by this Order.

I.   Notify the Court within 60 days of entry of this Order whether the Receiver intends to institute, compromise, adjust, appear in, intervene in, or become party to any new or pending actions or proceedings in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers.

J.   Notify the Court within 60 days of entry of this Order whether the Receiver intends to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or

21

against Corporate Defendants, as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order.

K.     Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate.

L.     Continue to maintain one or more bank accounts as designated depositories for funds of Corporate Defendants not disbursed to the FTC pursuant to Section X (Equitable Monetary Relief) of this Order, and make all payments and disbursements from the Receivership Estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties.

M.     Continue to maintain accurate records of all receipts and expenditures that he makes as Receiver.

N.     Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## XIV.   <u>COMPENSATION OF RECEIVER</u>

The Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Corporate Defendants.  In determining the amount of reasonable compensation, the Court and parties shall take into account the amount of available Assets and the Court's October 31, 2012 Order [D.E. 20].

## XV.  RECEIVER'S FINAL REPORT AND DISBURSEMENT OF ASSETS OF THE CORPORATE DEFENDANTS

A.     No later than sixty (60) days from the date of the entry of this Order, the Receiver shall

file and serve on the parties a report (the "Final Report") to the Court that details the

steps taken to dissolve the Receivership Estate.  The Final Report shall include an

accounting of the Receivership Estate's finances and total Assets and a description of

what other actions, if any, must be taken to wind-down the Receivership.  Promptly

thereafter, but no later than thirty (30) days after submission of the Final Report, the

Receiver shall file an application for payment of compensation and expenses associated

with his performance of duties as Receiver under this Order, the Temporary Restraining

Order [D.E. 10], and the Preliminary Injunction [D.E. 23] entered in this proceeding,

taking into account the amount of available Assets and the Court's October 31, 2012

Order [D.E. 20].  The Receiver shall mail copies of the Final Report to all known

creditors of Corporate Defendants with a notice stating that any objections to paying any

Assets of Corporate Defendants to satisfy the Receiver's costs and expenses and the

monetary judgment set forth in this Order must be submitted to the Court and served by

mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final

Report.  If subsequent actions (such as the completion of tax returns or further actions to

recover funds for the Receivership) are appropriate, the Receiver shall file an additional

report or reports ("Supplemental Report") describing the subsequent actions and a

subsequent application for the payment of fees and expenses related to the subsequent

acts.  Such subsequent application for payment of fees and expenses shall take into

account the amount of available Assets and the Court's October 31, 2012 Order [D.E.

20].

23

B.    The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing the Receiver to:

    1.    pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section XIV (Compensation of Receiver) of this Order or other orders of this Court, and the actual out-of-pocket costs incurred by the Receiver in carrying-out his duties; and

    2.    pay all remaining funds to the FTC, as directed in Section X (Equitable Monetary Relief) of this Order as partial satisfaction of the judgment.

## XVI.   TERMINATION OF THE RECEIVERSHIP

Upon completion by the Receiver of the tasks set forth in this Order and a determination by the Receiver that the Receiver will take no further action, the Receivership over Corporate Defendants shall be dissolved and the Receiver discharged.

## XVII.  COOPERATION WITH FTC COUNSEL

Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of Documents, and for such other matters as may be reasonably requested by the FTC.  If requested in writing by the FTC, Defendants shall appear and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

24

## XVIII. SEVERABILITY

The provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XIX.   ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgements of receipt of this Order:

A.   Each Defendant, within seven (7) days of entry of this Order, must submit to the FTC an acknowledgement of receipt of this Order sworn under penalty of perjury.

B.   For five (5) years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls, and each Corporate Defendant, must deliver a copy of this Order  to:  (1) all principals, officers, directors, and managers; (2) all employees, agents, and Representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth Section XX (Compliance Reporting).  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XX.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the FTC:

A.    One (1) year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.

    1.    Each Defendant must:  (a) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the FTC may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC;

    2.    Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences; (b) identify all titles and roles in all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For twenty (20) years following entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

     1.     Each Defendant must report any change in: (a) any designated point of contact; (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

     2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify its name, physical address, and Internet address, if any.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within fourteen (14) days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

27

E.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. A+ Financial Center, LLC, et al.*, No. 2:12-cv-14373-DLG (Southern District of Florida).

## XXI.   <u>RECORDKEEPING</u>

**IT IS FURTHER ORDERED** that Defendants must create certain records for twenty (20) years after entry of the Order, and retain each such record for five (5) years.  Specifically, Corporate Defendants and each Individual Defendant for any business in which that Defendant, individually or collectively with any other Defendants, is a majority owner or directly or indirectly controls, must maintain the following records:

A.   Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.   Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E.   A copy of each advertisement or other marketing material.

## XXII.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any Assets as required by this Order:

A.      Within fourteen (14) days of receipt of a written request from a representative of the FTC, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the FTC is authorized to communicate directly with each Defendant.  Defendant must permit representatives of the FTC to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.  The Person interviewed may have counsel present.

C.      The FTC may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XXIII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**FOR THE FEDERAL TRADE**
**COMMISSION:**

Bikram Bandy
Federal Trade Commission
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
Telephone: (202) 326-2978
Facsimile: (202) 326-3395
E-Mail: bbandy@ftc.gov

*Attorneys for the Federal Trade Commission*

**FOR DEFENDANTS:**

Christopher L. Miano
*Individually and as Managing Member and*
*Registered Agent of Accelerated Accounting*
*Services LLC*

Dana M. Miano
*Individually and as Managing Member and*
*Registered Agent of A+ Financial Center,*
*LLC, also doing business as Accelerated*
*Financial Centers, LLC*

Daryl J. Krauza
Dean, Mead, Minton & Zwemer
1903 South 25th Street, Suite 200
Fort Pierce, Florida 34947
Telephone: (772) 464-7700
Facsimile: (772) 464-7877
E-Mail: DKrauza@deanmead.com
*Attorney for Defendants A+ Financial Center,*
*LLC, also doing business as Accelerated*
*Financial Centers, LLC, Accelerated*
*Accounting Services LLC, Christopher L.*
*Miano, and Dana M. Miano*

**DONE AND ORDERED,** this  11 TH  day of  JUNE , 2015.

JUDGE DONALD L. GRAHAM
**United States District Judge**